### GLADYS FLORA CUNNINGHAM V. STATE

No. 29,200. November 6, 1957.

*Woody & Showers*, by *Clyde W. Woody*, Houston, for appellant.

*Dan Walton*, District Attorney, *Thomas D. White* and *Neil McKay*, Assistants District Attorney, Houston, and *Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, two years.

A 50-year-old wife killed her 59-year-old husband by shooting him with a pistol. The appellant admits firing one shot at the deceased inside their home and two more after the deceased was out in the yard. The state's testimony shows more shots to have been fired. There were no eye witnesses for the state. The appellant's son by a prior marriage was in the vicinity but did not see the shooting. The state's case depended upon the fact that the deceased was shot at, first in the house and then later as he was apparently fleeing. No weapons were found on or about the person of the deceased, nor did the appellant claim that he was armed. She told a sordid story of their marriage, separation, reconciliation, appellant's lack of kindness to her son, and of his brutality to her. She stated that the deceased was drunk on the occasion in question, and the state countered with evidence that he showed no signs of intoxication. The evidence from all sources indicates that a quarrel between the parties preceded the homicide and that the appellant's face had been lacerated and bruised. The appellant testified that she fired the first shot as the deceased came toward her with his hands upraised as if to choke her. She does not explain how she happened to be armed. Appellant testified that she fired at the deceased again after he ran out into the yard and says that she did this because he had expressed an intention of killing her son.

The state elicted from the witness Mrs. Nails the following testimony about the pistol and appellant's being armed with it on the occasion in question. The witness testified that some five or six weeks prior to the homicide the deceased brought a pistol to her house and she hid it between the mattress and the slats of her bed, that the appellant who was drinking came to her house alone and demanded that she deliver the pistol to her, that she refused but did deliver it to their house the following week. She testified further that on the night of the homicide, but prior thereto, the appellant called her on the telephone and told her that she had a gun and had it hidden and was going to use it that evening and, when referring to the deceased who was apparently away from his home at the time, said, "That bastard better not come back here tonight because I have the jump on him."

We overrule the appellant's contention that the court erred in failing to instruct a verdict of not guilty.

Appellant next contends that the court erred in permitting the state, through the witness Nails, to impeach the appellant's testimony on a collateral matter by elicting the testimony con-

cerning the deceased bringing a pistol to her house sometime before the homicide, her secreting the same, and the appellant's efforts to secure possession thereof. We do not consider that the evidence depends upon the impeachment rule to render it admissible. Certainly, any evidence concerning previous relationships between the accused and the deceased, and especially the efforts of one to secrete and the other to find the weapon later used in the homicide, would be admissible by virtue of Article 1257a, V.A.P.C. Bozeman v. State, 85 Texas Cr. Rep. 653, 215 S.W. 319.

Finding no reversible error, the judgment of the trial court is affirmed.